Trippe, Judge.
The collection and protection of the revenue of the State is of such paramount interest, that the most stringent provisions for that purpose are to be found both in the Constitution and the Code. No tax payer can contest, by litigation before the Courts, the amount assessed against him as due the State. The State cannot permit the receipt of its revenue to.be delayed, by becoming a litigant in the Courts, and hence provided in section 3618 of the Code: “No replevin shall lie, nor any judicial interference be had in any levy or distress for taxes under the provisions of this Code,” etc.
The Constitution, Article II., Par. 4, says: “No person who is the holder of any public moneys shall be eligible to any office, in this State, until the same is accounted for and paid into,the treasury.” Section 129 of the Code prescribes that, “all public officers shall swear that he is not the holder of any public money due this State unaccounted for.” Section 120 is: “The following persons are held and deemed ineligible to hold any civil office in this State, and the existence of either of the following state of facts is a sufficient reason for vacating any office held by such person. * * * All holders or receivers of public money of this State, or any county thereof, who have refused when called upon, or failed after reasonable opportunity, to account for and pay over the same to the *proper officer.” Section 918 provides that, “the Governor may vacate the commissions of defaulting tax collectors, or of tax receivers, failing ór refusing to do their duty,' and in such event the vacancy shall be filled in the manner prescribed for other vacancies.”
These provisions demonstrate what strong guards and means for summary protection both the organic and statute law throw around the public money. The running of the State machinery is so intimately connected with its treasury, and may be said to be so dependent upon it, and is of such transcendant importance to the citizens and the public, that it cannot be subjected to the ordinary rules governing in other cases. Though great power is given to the Governor in the case of tax collectors and tax receivers, public policy and public necessity require it. Unless summary power and a speedy remedy be lodged somewhere, great danger may ensue — a danger greater to the State than a possible wrong that may be done by mistake, or otherwise, to the officer.
*108 It is contended that Article IX. of the Constitution, which says that county officers “shall be removable, on conviction, for malpractice in office, or on the address of two-thirds of the Senate,” is inconsistent with section 918 of the Code, and consequently that section is abrogated by Article II., Par. 3, of the Constitution. But is there any conflict between these two provisions? The intention of the Constitution is to provide for the removal, asa penalty, to have a judgment pronounced by the Court or the Senate which shall operate as a removal, as a throwing out of oiñce, by virtue of that sentence. But in the case of a defaulting tax collector, one who holds public money unaccounted for, and who, by the Constitution and the law, is ineligible to take or to hold office, the law is not that the Governor shall remove, but, on account of that status of ineligibility, shall declare the office vacant, and that some one shall be put in who is constitutionally competent. It may be asked, who is to determine the default? This is provided for. There is an officer from whose decision on this there can be no appeal — at least, no appeal to any legal remedy. *When the- Comptroller General so pronounces and issues an execution against a tax collector, by judgment,of law, which he is not allowed to deny, he is in default, and is presumed to be a holder of public money unaccounted for, and, by judgment of law, is in a condition of constitutional disability to continue in office. The Governor has, in fact, no option but to provide the State another officer who is, by the law, competent to serve. It is, pro hac vice, as if the party was dead, or had removed beyond the limits of the State. Of course, it is not intended that such an officer, in case of a. criminal prosecution for his default, is denied the right to contest the action of the Comptroller General. There, all the rules obtaining in criminal cases would apply, but all the consequences as to an absolute right to recover the money and to vacate his commission would attach.
But further, conceding that the vacating the commission of the officer and removal from office, are in law equivalent, why may not the means provided by the statute and by the Constitution be said to be cumulative remedies or provisions' for the protection of the public funds? We have seen how far these provisions go, outside of that granting this power to the Governor. If one is a holder of public money, unaccountéd for, he shall not have office. Before he can take office he must swear that he is not such holder. If he becomes such whilst in office, he shall be removed. And if he holds an office so highly important in its relations to the public revenue as that of tax collector, is it not a wise provision for the State to be protected against delay in the removal of one in default, by an appeal to the Courts or awaiting a session of the General Assembly? This seems to be the spirit and purpose of all the provisions on this subject.
Judgment affirmed.